UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EDMOND D. JORDAN

VERSUS

MARY MITCHELL, ET AL

CIVIL ACTION

NO. 10-746-JJB

## RULING ON DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY, RENEWED MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion to Dismiss and, alternatively, renewed Motion for Summary Judgment (Doc. 47) filed by Defendant Janet Napolitano. The plaintiff filed a Memorandum in Opposition (Doc. 49). The defendant filed a reply (Doc. 52). Jurisdiction is based upon 28 U.S.C. § 1331. Oral argument is not necessary.

I. Facts

The Plaintiff, an attorney, began a two-year appointment working in the Baton Rouge Office of Chief Counsel ("OCC") for the Federal Emergency Management Agency ("FEMA"), in October 2006, with Linda Davis as his supervisor. Doc. 43-2 at 11, 13, 15–16. The Plaintiff worked fifteen to twenty hours per week in his private practice while employed by FEMA. *Id.* at 11–12. Within a few months of starting at FEMA, the Plaintiff began receiving assignments from Jill Igert, one of the head attorneys in the Baton Rouge and New Orleans area. *Id.* at 16–17. However, George Cotton was the Baton Rouge office lead and the Plaintiff's supervisor. *Id.* at 12, 15, 18. In March 2007, Cotton informed Igert he had issues with the Plaintiff's attendance at work and his attendance to his job duties, specifically, that the Plaintiff was often not in his office and could not be found within FEMA. Doc. 43-3, ¶ 4. The Plaintiff's working relationship with Cotton deteriorated due to the Plaintiff's absenteeism and its effect on the office.

1

*Id.* Igert intervened and met with the Plaintiff and Cotton, counseling the Plaintiff on the need to work a full forty hour week during normal business hours, the importance of filing leave slips when going out of the office, and informing office personnel if leaving his office other than for lunch or scheduled breaks. *Id*; Doc. 43-2, at 24. Mary Mitchell served as Deputy Senior Counsel for the FEMA OCC from November 2007 to July 2009. Doc. 43-4, ¶ 5. When she became supervisor, she was aware of an ongoing issue involving the Plaintiff's attendance at work, and she observed that the Plaintiff was often not in his office and could not be found within FEMA. *Id.*

Sometime in late October or early November 2007, Igert informed the attorneys in the Baton Rouge office, the Plaintiff, Cotton, and Veronica Howard-Sizer, that they needed to come to the New Orleans office at least two days a week. Doc. 43-3, ¶ 5. All of the senior staff with whom the attorneys were working were located in New Orleans. *Id.* Mitchell was in the main office in New Orleans frequently during the week. Doc. 43-4, ¶ 7. The news was not received well by any of the three attorneys working in Baton Rouge, including the Plaintiff. Doc. 43-3, ¶ 5.

The Plaintiff alleges that Igert made a comment on a November 2007 conference call suggesting people might want to get rid of anything, including papers and emails, related to formaldehyde in FEMA trailers. Doc. 43-2, at 29–30. After the conference call, the Plaintiff contacted Paul Conrad, the lead ethics advisor for the OCC. *Id.* at 30–31. The Plaintiff believes Conrad reported his complaint to others, including Bob Parker and a supervisor of the field attorneys. *Id.* at 31. In early December 2007, Igert learned from her supervisors about the complaint, but not who made the complaint. Doc. 43-3, ¶ 6. She thought the complaint could have come from one of the three attorneys in

2

Baton Rouge, because she knew they were upset with her. *Id.* Igert never told the Plaintiff she knew he made a complaint against her or went to the ethics office, but his conversations with her indicated to him that she knew. Doc. 43-2, at 35–37. Specifically, the Plaintiff told Igert he did not have anything against her, and she responded by stating that is not what she was told. *Id.* at 37. The Plaintiff also believes there was a conflict in Igert serving as chief of staff and senior counsel for the OCC. *Id.* at 34, 37–39.

Mitchell could not monitor the comings and goings of personnel in Baton Rouge from New Orleans and became concerned that she would not be able to correctly certify time sheets. Doc. 43-4, ¶ 7. Mitchell consulted with Igert, and they agreed the best way for Mitchell to keep track of employees' comings and goings was to have employees check in with her or, in her absence, Shirley White, an administrative assistant in the Baton Rouge office. *Id.* At no time did Igert prescribe a course of action for Mitchell regarding the Plaintiff, nor did she tell Mitchell to treat the Plaintiff differently from any other employee in the office for any reason. *Id.* at ¶ 9.

On December 10, 2007, Mitchell counseled the Plaintiff regarding the FEMA absence and leave policy. *Id.* at ¶ 8. The counseling session arose after Jordan could not be located for an extended period of time on December 6, 2007. *Id.* During the session, Mitchell reminded the Plaintiff to let her or White know of any extended out of office time and to submit a leave slip when the absence would exceed a normal lunch or break period. *Id.* Mitchell also advised the Plaintiff that all future annual leave requests or leave without pay requests would have to be approved in advance. *Id.* At the time of the counseling session, the Plaintiff had taken over forty hours in leave without pay. *Id.*

3

Case 3:10-cv-00746-JJB-RLB   Document 53   07/19/13   Page 3 of 13

Prior to directing the Baton Rouge attorneys to travel to New Orleans on a regular basis, Igert asked the Plaintiff to provide counsel for FEMA's Environmental Department and Mitigation Section. Doc. 43-3, at 4. She made this decision because he had come to FEMA from DEQ and his specialized knowledge base and skills set as a lawyer would best be used in the Environmental Department and Mitigation Section. *Id.* The change in the nature of work that the Plaintiff was requested to do did not affect any of the conditions of his employment. *Id.* He received the same pay, was still being required to provide legal analysis for FEMA projects, and was still required to travel to New Orleans two days per week. *Id.* The Plaintiff never introduced himself to the head of the Environmental Section, never did any work, and thereby ignored Igert's directives. *Id.* Despite this, no adverse consequence resulted from his failure to devote himself to the assigned sections. *Id.* Igert, who rarely went to the Baton Rouge office, spied on the Plaintiff in his office one day in March 2008, looking over his shoulder through a glass door as if she was trying to catch him doing something wrong. Doc. 43-2, at 49–50; Doc. 43-3, ¶ 10. Igert claims she was observing the Plaintiff and Howard-Sizer in the performance of their work duties, and observed that the Plaintiff was on the internet through the day and did not appear to be working on FEMA projects. Doc. 43-3, ¶ 10. Igert confronted the Plaintiff about his usage, and the Plaintiff said he did not have a project at the time. *Id.* No adverse action came to the Plaintiff as a result of Igert's observations that day. *Id.*

In early 2007, Igert became aware that one of the other attorneys had a conflict between her employment with FEMA and her work with a local school board. *Id.* at ¶ 11. The conflict reached the OCC and created a problem for the agency. *Id.* Based on

4

this incident, Igert was specifically instructed to make sure than any employee with outside employment disclosed all of his or her financial interests to the agency. *Id.* In April of 2008, it became apparent that the Plaintiff had an outside private practice, which he disclosed on his OGE Form 450, which was used by attorneys to report their financial interests. *Id.* As a supervisor, Igert was required to review and sign the OGE Form 450 to ensure that no cases or projects were assigned to the attorney that might create a conflict or an appearance of a conflict. *Id.* The Plaintiff brought Igert his form to sign, and Igert signed it so the form could be forwarded to the OCC. *Id.* It would not be improper for a supervisor to access an employee's OGE Form 450 if the motive is proper, such as looking for potential conflicts. Doc. 43-2, at 47. The Plaintiff was not demoted and did not suffer a reduction in pay from Igert inquiring about his OGE Form 450. *Id.* at 45–48.

The OCC was tasked with providing legal analysis and any proposed comments to the Memorandum of Understanding ("MOU") for Charity Hospital by the close of business on Friday, April 18, 2008. Doc. 43-4, ¶ 11. On April 16, 2008, at 5:25 p.m., Mitchell forwarded the MOU to reviewers and asked that they submit their comments in the draft with their initials by Friday morning. *Id.* At 8:58 a.m. on that Friday, Mitchell sent Jordan an email asking if he had reviewed the information and was ready to provide comments. *Id.* At 9:47 a.m., the Plaintiff sent Mitchell an email stating he did not have any comments to provide. *Id.* Seven minutes later, Mitchell sent a follow-up email advising the Plaintiff he needed to provide her with a legal opinion, and gave him specific points to address. *Id.* The Plaintiff did not respond to that email. *Id.* Mitchell went by the Plaintiff's office a couple of times after she sent the email, and he was not

5

in.  *Id.*  At 1:18 p.m., Mitchell sent the Plaintiff another message asking him to call her on his BlackBerry to let her know the status of his comments on the MOU.  *Id.*  She got no response.  *Id.*  Mitchell emailed the Plaintiff again at 1:55 p.m. and asked him to call her.  *Id.*  At that time, he called her and told her that he did not think he had to respond since the deadline she gave him had passed.  *Id.*  The Plaintiff did not provide the requested legal opinion or address the points Mitchell asked him to address.  *Id.* at ¶ 12.

The Plaintiff was out of the office that day from 11:45 a.m. to approximately 2:00 p.m. for an appointment at the Equal Rights Office ("ERO").  Doc. 43-2, at 63, 67.  Mitchell followed up with the ERO to confirm the Plaintiff was there, but did not inquire into the nature of his visit, nor did she know at that time that the Plaintiff was preparing his own Equal Employment Opportunity ("EEO") claim.  Doc. 43-4, ¶ 12.  Following this series of events, Mitchell counseled the Plaintiff on his unaccounted-for time and his absence from the office in the middle of a deadline prior to completing an assignment.  *Id.*  Despite the counseling sessions, Mitchell continued to have problems with the Plaintiff's failure to inform her when he would be out of the office and his failure to submit leave slips in a timely fashion, and his reluctance to travel to New Orleans twice a week.  *Id.* at ¶ 13.  The Plaintiff would give Mitchell vague information about his schedule without submitting a leave slip and then would accuse her of retaliation if she asked more information about his whereabouts or his absence from the office.  *Id.*  At least some of this activity occurred in May 2008.  *Id.* at ¶ 13, p. 16–18.  The Plaintiff voluntarily left FEMA in July 2008.  *Id.* at ¶ 15.  His last day at work was July 10, 2008.  *Id.*

II. Procedural History

On March 31, 2008, the Plaintiff initiated a formal complaint with FEMA. Doc. 43-5, ¶ 4. On May 15, 2008 the Plaintiff filed a formal EEO complaint, and a letter acknowledging the complaint was sent to the Plaintiff on June 2, 2008. *Id.* On June 13, 2008, FEMA sent an acceptance letter to the Plaintiff, identifying the basis for his complaint as race (African-American), sex (male), and reprisal (no prior EEO activity). *Id.* at ¶ 6. The letter indicated the issues involved a hostile work environment demonstrated by the following incidents:

- January 15, 2008, Management would not allow him to continue reviewing and approving lease terminations, and told him he had to find work, which he believes is retaliation for his ethics complaint dated November 30, 2007;

- March 28, 2008, management "spied" on his work and did not spy on his co-workers;

- April 18, 2008, management violated Complainant's privacy by contacting the Equal Rights Officer (ERO) asking about his EEO session with the ERO;

- From April 18th through May 29, 2008, management made false accusations against him about time and attendance issues, which included extended/excessive lunch breaks and not following proper leave procedures.

*Id.* On June 18, 2008, FEMA sent Plaintiff an amended letter adding the following issues:

- On June 18, 2008, you learned that management had been tracking the time and attendance of the lawyers in the Baton Rouge Office because they were concerned about a certain employee, whom you believe is you.

- Between January and April 2007, management contacted the Ethics Office to consult about the prohibition of employees having a private practice, which you have.

7

*Id.* at ¶ 7.  After the investigation and a decision by the Administrative Judge, a final agency decision in favor of FEMA was issued on July 23, 2010.  *Id.* at ¶ 9.

On July 10, 2009, the Plaintiff filed suit against the Defendants in this Court ("the First Action").  The Plaintiff initially asserted that (1) Igert, Mitchell, and FEMA created a hostile work environment and retaliated against him for filing a complaint against Igert in violation of Title Forty-Two of the United States Code, Sections 1981 and 1983, and the Whistleblower Protection Act, Title Forty-Two of the United States Code, Section 2302(b)(8) ("WPA"); and (2) Igert and Mitchell engaged in a civil conspiracy to interfere with the Plaintiff's civil rights in violation of Title Forty-Two of the United States Code, Section 1985(3) ("Section 1985 claim").

On March 4, 2010, this Court granted the Defendants' Motion to Dismiss each of Plaintiff's claims in the First Action.  Doc. 10-2.  The Court found the Plaintiff's hostile work environment and retaliation claims were precluded because they were covered exclusively by Title VII and, at the time, Plaintiff's Equal Employment Opportunity Commission ("EEOC") charge was still under review.  *Id.*  As such, the Court concluded these claims were premature.  *Id.*  The Court also found that the Plaintiff's Section 1985 claim must be dismissed because it "ar[ose] out of facts that would give rise to a Title VII employment discrimination claim" and was thus preempted, given that Title VII represents the exclusive method of recovery in such situations.  *Id.*  Finally, the Court dismissed Plaintiff's WPA claim because the WPA does not provide for direct relief in federal court, and in order for a federal court to hear a WPA claim as an original matter, it must be combined with a Title VII claim, which Plaintiff had not asserted.  *Id.*

8

On November 10, 2010, the Plaintiff again filed suit ("the Second Action") against the Defendants. Doc. 1. The Plaintiff's complaint in the Second Action was completely identical to the complaint in the First Action except that the Plaintiff noted that the EEOC had dismissed his charge. On May 25, 2011, the Defendants filed their Motion to Dismiss (Doc. 10); on June 28, 2011, the Plaintiff filed a First Supplemental and Amended Complaint (Doc. 16) adding, among other things, a Title VII Claim; and, on June 29, 2011, the Defendants filed an Amended Motion to Dismiss (Doc. 17). The Court granted in part the Motions to Dismiss as they related to the Plaintiffs Section 1985 civil conspiracy claim, and denied in part the Motions to Dismiss as they related to the Plaintiff's remaining claims. Doc. 19.

On May 25, 2012, the Defendants filed another Motion to Dismiss (Doc. 29), requesting dismissal of the individual defendants and the federal agency as improper parties to the action. The Court issued an Order (Doc. 35) denying the Motion to Dismiss as moot, relying on the Court's recent Order (Doc. 34) granting the Plaintiff's Motion to substitute Janet Napolitano as a party defendant (Doc. 33). On July 18, 2012, the Plaintiff filed a Second Supplemental and Amended Complaint (Doc. 38), adding William Craig Fugate, head of FEMA, as a Defendant. Napolitano brought a Motion for Summary Judgment (Doc. 43), which the Court granted in part and denied in part. The Court granted Summary Judgement in regards to the Title VII claims of hostile work environment and constructive discharge, which left the retaliation and WPA claims. Doc. 46. The Court concluded the various incidents alleged by Jordan do not reach the level required to establish a constructive discharge claim. *Id.* at 14. Napolitano now

brings the instant Motion seeking for the court to dismiss the plaintiff's WPA claims for lack of jurisdiction, or alternatively, to grant summary judgment on the claims.

## III. Motion Standard

The Court cannot resolve the issues solely based on the complaint, so the summary judgment standard is appropriate. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary

Case 3:10-cv-00746-JJB-RLB   Document 53   07/19/13   Page 10 of 13

judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

IV. Analysis

Napolitano argues Jordan's WPA claims fail for lack or jurisdiction as the case is not by an employee affected by an action which the employee may appeal to the Merit System Protection ("MSPB") as required. Napolitano argues the only appealable action Jordan could claim is involuntary discharge, but this Court already ruled he was not involuntarily discharged. Jordan responds he is a temporary Stafford Act employee without recourse to the MSPB. He asserts that since the Court had jurisdiction of the mixed action prior to dismissing the Title VII claim, it has jurisdiction now. Jordan also argues issues of fact exist as to whether his resignation was involuntary. Napolitano, in response, contends temporary Stafford Act employees, although unable to avail themselves of normal federal employee protections, can still appeal whistleblower claims to the MSPB. She argues Jordan did not oppose her original Motion for Summary Judgment (Doc. 43), the Court has ruled on voluntariness, and Jordan presents no evidence to merit reconsideration.

Stafford Act temporary employees do not normally have the same protections provided to permanent employees. *See Archer v. Merit Systems Protection Bd.*, 491 F. App'x 192, 194 (Fed. Cir. 2012). However, the Plaintiff's temporary status does not bar him from seeking protection from retaliation based on whistleblower disclosures. The prohibition against retaliatory actions on whistleblower disclosures applies to any federal

11

Case 3:10-cv-00746-JJB-RLB   Document 53   07/19/13   Page 11 of 13

employee, including a temporary one. See 5 U.S.C. §2302(b)(8). The MSPB has jurisdiction for whistleblower claims by temporary employees. *Kern v. Dept. of Agriculture*, 48 M.S.P.R. 137, 140 (M.S.P.B. 1991). *See also Dooley v. Dept. of Veterans Affairs,* 306 F. App'x 594, 596 (Fed. Cir. 2009) (holding that the MSPB lacks the jurisdiction to hear any appeal concerning a temporary employee's termination, other than whistleblower's claim); *Wheeler v. Dept. of Commerce*, 59 F. App'x 331, 332 (Fed. Cir. 2002) (holding that a temporary employee could establish jurisdiction in a whistleblower claim case). Jordan's status as a temporary Stafford Act employee, therefore, does not exempt him from Napolitano's jurisdictional argument.

Federal employees asserting WPA claims must first file a complaint with the Office of Special Counsel ("OSC"), unless they fit an exception allowing appeal directly to the MSPB. 5 U.S.C. §1214. If the OSC finds a violation, it reports its findings to the MSPB. 5 U.S.C. §1214(b)(2)(B). If no violation is found or if the action is directly appealable, the action may be brought to the MSPB. 5 U.S.C. §1214(a)(3), 1221(a). The decision of the MSPB is generally only appealable to the U.S. Court of Appeals for the Federal Circuit. 5 U.S.C. §7703(b)(1)(A). However, in cases that involve discrimination as well as an appealable action to the MSPB, the district court has jurisdiction over these "mixed" action claims. 5 U.S.C. §7702; *Ivey v. Paulson*, 222 F. App'x 815, 818 (11th Cir. 2007).

Jurisdiction over "mixed cases" lies with the district court if the action appealed is (1) a removal, (2) suspension for more than 14 days, (3) a reduction in grade, (4) a reduction in pay, or (5) a furlough of 30 days or less. 5 U.S.C. §7512. Voluntary resignation is not an appealable action; therefore this Court would not have jurisdiction.

12

Case 3:10-cv-00746-JJB-RLB    Document 53    07/19/13    Page 12 of 13

*Cruz v. Dept. of Navy*, 934 F.2d 1240, 1244 (Fed Cir. 1991). Resignations are presumed voluntary unless the Defendant submits evidence overcoming this. *Id.* The legal standard for constructive discharge is the same for whistleblower actions as it is for discrimination actions. *Mintzmyer v. Dept. of Interior*, 84 F.3d 419, 423 (Fed. Cir. 1996). Since this Court previously ruled that Jordan's resignation did not reach the level of a constructive discharge, the decision applies here, and Jordan's WPA claims do not have jurisdiction based on removal.[1] Doc. 46, at 14–15. Accordingly, and in light of the fact that Jordan does not argue that he has jurisdiction based on any other type of action, the Court does not have jurisdiction over the WPA claims.

V. Conclusion

Accordingly, Defendant Janet Napolitano's Motion to Dismiss and Alternatively, Renewed Motion for Summary Judgement (Doc. 47) is **GRANTED**.

**IT IS HEREBY ORDERED** that the Plaintiff's WPA claims are dismissed.

Signed in Baton Rouge, Louisiana, on July 19, 2013.

_____
**JAMES J. BRADY, DISTRICT JUDGE**

---

[1] Jordan argues this conclusion is based on Defendant's view of the facts. However, Jordan has not attempted to present evidence to support this argument previously or in response to the instant motion.